\*STATE EX REL. ELLIS, ATTY. GEN. v. UNION CENTRAL L. INS. CO.

1. FALSE REPRESENTATIONS TO PROSPECTIVE POLICY HOLDERS AS TO PARTICIPATION IN PROFITS DO NOT MAKE A STOCK COMPANY A MUTUAL ONE.

That representations made by life insurance companies are not all true is a matter of general knowledge. Hence, representations concededly intended to deceive prospective policy holders or recklessly made by a stock company that it was doing a mutual business, and that policy holders, electing to take participating contracts, had written in their contracts that they should share in the profits "as apportioned by the company" does not transform such company into a mutual company or even make the participating contracts, mutual insurance contracts, or estop the company from treating the surplus funds as belonging to the stockholders.

2. COMMINGLING OF FUNDS OF PARTICIPATING AND NONPARTICIPATING CONTRACTS NOT MISUSE OF CHARTER RIGHTS OF STOCK COMPANY.

The doctrine of commingling of funds cannot be resorted to in showing misuse of charter privileges by a life insurance company where neither contract, law nor usage has required such company to keep its funds separate.

3. PUBLIC MISCHIEF NOT PRIVATE RIGHTS DETERMINABLE BY QUO WARRANTO PROCEEDINGS.

In quo warranto against an insurance company for alleged misuse of its franchise, the only question for consideration is whether some public mischief is being done or threatened; a court cannot concern itself with the rights of policy holders or stockholders.

[Syllabus approved by the court.]·

QUO WARRANTO.

U. G. Denman, Atty. Gen., Kinkead & Rogers, A. I. Vorys, W. H. Miller and C. F. Williams, for plaintiff:

Cited and commented upon the following authorities: Greeff v. Equitable Life Assur. Soc. 160 N. Y. 19 [54 N. E. Rep. 712; 73 Am. St. Rep. 659]; Pomeroy, Eq. Jur. Secs. 819, 1088, 1170, 1184; Herman, Estoppel Secs. 1187, 1195; New York L. Ins. Co. v. Eggleston, 96 U. S. 572 [24 L. Ed. 841]; 2 Thompson, Corporations (2 ed.) Sec. 1946; 2 Herman, Estoppel

---

\*Affirmed, no op., State v. Insurance Co. 84 O. S. 459.

State v. Insurance Co.

925; *Steele* v. *Insurance Co.* 3 Mo. App. 207; *Wood* v. *Devarris,* 11 Exch. Rep. 492; *Collett* v. *Morrison,* 9 Hare 173; *Pence* v. *Arbuckle,* 22 Minn. 417; *Kinney* v. *Whiton,* 44 Conn. 269; *Waterford (Bd. of Ed.)* v. *Bank,* 70 Hun. 520 [24 N. Y. Supp. 392]; *Beardsley* v. *Foot,* 14 Ohio St. 414 [84 Am. Dec. 405]; *Miller* v. *Sullivan,* 13 Dec. Re. 544 (1 C. S. C. 281); *Raynolds* v. *Cleveland (City),* 28 O. C. C. 463 (8 N. S. 281); *Ensel* v. *Levy,* 46 Ohio St. 255 [19 N. E. Rep. 597]; *Carlton* v. *Insurance Co.* 72 Ga. 371; *McGovern* v. *Knox,* 21 Ohio St, 547 [8 Am. Rep. 80]; *Rapp* v. *Elevator Co.* 87 N. Y. Supp. 459; *Southern Mut. Ins. Co.* v. *Montague,* 84 Ky. 653 [2 S. W. Rep. 443; 4 Am. St. Rep. 218]; *Larwill* v. *Burke,* 10 Circ. Dec. 605 (19 R. 513); *Central Nat. Bank* v. *Insurance Co.* 104 U. S. 54 [26 L. Ed. 693]; Pomeroy, Eq. Jurisp. Sec. 1076; *Cook* v. *Addison,* L. R. Eq. 466; *United States L. Ins. Co.* v. *Spinks,* 29 Ky. L. R. 960 [96 S. W. Rep. 889].

*Lawrence Maxwell, Robert Ramsey* and *J. B. Foraker,* for defendant.

**SWING, J.**

This is an action in quo warranto, wherein the state claims the company has misused its franchise in that it declared a stock dividend of $400,000 in the year 1908 out of its surplus funds.

The company was organized in the year 1867 as a stock company, with an authorized capital of $500,000—$100,000 of which was paid in. The company continued to do business on this capital stock until 1908, when the capital stock was increased to $500,000. During the existence of the company it wrote both participating and nonparticipating contracts of insurance. Under able management the company became very prosperous, so that at the date last mentioned it had above liabilities a surplus of over $2,400,000. During the forty years of its existence no separate account of the expense and profits was kept of the participating and nonparticipating business. Beginning in 1907 several of the states passed laws requiring life insurance companies to separate the surplus derived from

these two different kinds of policies and to maintain this separation, and about the same time the state of California passed a law requiring life insurance companies doing business in that state to have a paid up capital of $200,000.

To meet these requirements this company first attempted to ascertain the amount produced by the different kinds of policies respectively. The result of this investigation showed that the nonparticipating business had produced nearly $800,-000, and out of this the company declared the stock dividend of $400,000. The state challenged the correctness of the result arrived at by the company, and under the direction of superintendents of insurance of several states Mr. Wolfe, an actuary of New York City, made an investigation of the affairs of the company with the result that a different conclusion was reached from that made by the company. The trial of this case occupied about seven days, and the most of this time was occupied in submitting to the court evidence bearing on the question whether the company had the surplus of $800,000 arising out of its nonparticipating business. It is admitted, and it is self-evident, that it is impracticable to accurately separate these funds within any reasonable time, so that an approximation can only be had. And it is also amitted this approximation can be reached only by estimation after the proper determination of certain facts. We deem it inexpedient, and it certainly would serve no good purpose for us to enter into a review of the evidence in this opinion, but we content ourselves by stating that after a careful consideration of the evidence we have reached the conclusion that there was in this surplus at the time in question a sum largely in excess of $400,000, which was placed there by the nonparticipating business.

We mention two facts which we deem of great probative force in reaching this conclusion. One is that we find Mr. Wolfe's result was not accurate, and when we say this we intend no reflection on Mr. Wolfe, or his ability, for he impressed us as being a very able man, but the mass of material that he had for investigation and the limited time at his disposal account for this; and secondly, we regard as the most

State v. Insurance Co.

convincing evidence in the whole case the result of the non-participating business for the years 1908-1909, which show beyond any question a very large surplus on the nonparticipating business for those years, and this was the same business that had been in existence in the years next previous. The surplus from this business in these two years was more than $400,000.

Beyond any question, therefore, we think there is in the surplus of the company derived from the profits of its non-participating business a sum largely in excess of the $400,000.

It is claimed, however, by the state that the company is estopped by representations made by it from treating this fund as belonging to the stockholders. A good deal of evidence was offered by the state on the trial pertinent to this matter. It consisted largely of extracts from certain publications made by the company in the nature of advertising matter, wherein it was stated that all the profits went to the shareholders, that the company did a mutual business, and that the policy holders got all the profits. And similar representations were made in reports to the insurance commissioner of the state, and evidence was offered as to the statements made by the company in a legislative investigation made by the state of Wisconsin to the same effect.

That all of these statements so made were not true must be conceded; that they were calculated to deceive prospective policy holders may also be conceded, and possibly it might be said that they were either recklessly made or intended to deceive; but it is a matter of common knowledge that all representations made by life insurance companies and life insurance agents are not true. It is an undisputed fact that this company was not a mutual company and did not do a mutual insurance business; it was a stock company, and wrote participating and nonparticipating contracts of insurance, and these contracts of insurance, and what was necessarily a part of them, contained the measure of the rights and liabilities of the parties to them. Nothing can be taken from and nothing can be added to them. They are fixed. The policy holder who en-

tered into a nonparticipating contract knew he had no mutual contract of insurance, the terms of his contract prohibited this, and the policy holder who took out a participating contract had stated in the contract the exact nature of the participation that he was to enjoy, and in these policies it was that they should share in the profits "as apportioned by the company." Such a contract is in no sense a mutual insurance contract.

This company had at the date in question a surplus of over $2,400,000. To whom does this belong? Undoubtedly to the company. And who are the company? The stockholders. Not a penny of it belongs to any policy holder. This surplus was accumulated by the company through a wise and judicious management of its business, the foundation of which was from the premiums paid into the company by its policy holders, the most of which came no doubt from the policies long since matured and which have been adjusted to the entire satisfaction of the policy holder and the company. This surplus adds strength and stability to the company as a whole, and is not there for the benefit or protection of the participating policy holders. It was not so intended and could not have been so understood. The evidence in this case disclosed that during a large portion of the time that the company wrote nonparticipating policies they produced a loss, and such loss was more than made good from the profit derived from the participating business. The state of Ohio did not object to this, nor did any policy holder, so far as we are advised.

There was no law or contract that compelled the company to create this surplus, and so far as we are aware there is no contract or law that compels the company to maintain it. Its maintenance, like its creation, must rest in the sound discretion of its board of directors. It can never be returned to the policy holders who created it, for the most of these contracts have terminated.

It is claimed on the part of the state that the company is estopped from declaring this stock dividend by its conduct and representations, and the doctrine of estoppel as laid down in the books is invoked in support of the claim. But in our judg-

State v. Insurance Co.

ment it has no application.   The complaint here is that the company has misused its franchise, or has acted beyond its powers, to speak more accurately; and the only way that this writ can be invoked is on the theory that a wrong has been done the public.   The court can not in this action concern itself with the rights of policy holders or stockholders, but can only consider wherein some public mischief is done or threatened.   If the rights of any policy holder had been invaded it is for him to take such action as he may deem best for his protection, but not for the state to do it for him.

We are unable to see how the act of the directors in declaring this stock divided has invaded any right of any policy holder, and much less inflicted any injury on the public.   When the directors declared this stock dividend it took nothing away from the company, and added nothing to what it already had. If it had any effect at all, it was to increase the stability of the company and add to the security of the policy holder.   The only change affecting the stockholder was that if the company earned the dividend he would receive dividends on this stock.

Looking at it in any light, if we are correct in our conclusion that the evidence shows that there is at the present time $10,000,000 in surplus placed there from the nonparticipating business, the excess over the $400,000 would pay these dividends for twenty years to come, and there could be no possible injury to the public.

What has just been said applies as well to the claim of the state that the doctrine of commingling of funds applies here; that not having kept a separate account of the funds produced by the participating and the nonparticipating policy holders, the company can not separate these funds.   Now this principle has no application here.   Neither by contract, law or usage was the company compelled to, or expected to, keep these funds separate.   Until laws were passed requiring it, there were no separate funds.   It was one fund, and one only, and there was no occasion to keep them separate.

The only other matter that we desire to refer to is the claim that the company had no power to change its by-laws so

that this stock might be issued. It must be admitted that the same power that created the by-laws had the power to change them, and in this case we can not see wherein in doing so any right of the public has been invaded.

This case has been fully and ably argued to us at length by learned and able counsel, and able and elaborate briefs have been submitted to us. In argument and in briefs numerous authorities have been cited in support of the legal propositions involved. We do not deem it expedient, however, to discuss these authorities in this opinion, but content ourselves by stating the law as we conceive it to be.

In our judgment the relief asked for must be denied, and the petition be dismissed.

**Giffen and Smith, JJ.,** concur.